Fee paid

Oleg Elkhunovich (269238)
oelkhunovich@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Stephen Shackelford, Jr. (*to seek pro hac vice*)
Steven M. Shepard (*to seek pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*

FILED
CLERK, U.S. DISTRICT COURT
2/14/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: GSA DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

*ex rel.* VERITY INVESTIGATIONS, LLC,

*Plaintiff/Relator,*

v.

CONVAID PRODUCTS, LLC

*Defendant.*

Case No. 2:25-cv-01280-AB-(MARx)

**ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.***

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX**

**Jury Trial Demanded**

## QUI TAM COMPLAINT

## I. INTRODUCTION

1. This is a *qui tam* case, filed on behalf of the federal government, seeking to recover nearly $1.5 million (plus mandatory trebling) that Defendant wrongfully obtained in the form of a federal guaranteed loan by falsely certifying that it had fewer than 300 employees and was not owned by an entity that has significant operations in China. That loan was later forgiven, and the federal government paid the bill.

2. The loan in question was provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act."[1] 15 U.S.C. § 636(a)(37).

3. In early 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans. This case involves a false application for a Second Draw PPP loan.

4. The Second Draw PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[2]

---

[1] SBA INSPECTOR GENERAL INSPECTION REPORT, The Small Business Administration's Implementation of Recommended Controls and the Economic Aid Act (Aug. 12, 2021), https://www.sba.gov/sites/sbagov/files/2021-08/SBA%20OIG%20Report%2021-19.pdf.

[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

5. The Second Draw PPP loans created additional criteria that an entity with "significant operations" in the People's Republic of China could not own more than 20 percent of the small business applicant.

6. Defendant falsely certified to the SBA that (1) it had 120 employees and (2) it was not a business concern owned or held by an entity with significant operations in China. As a direct result of those false statements, Defendant obtained a Second Draw PPP loan of $1,475,000.00, which was later forgiven.

7. Relator is an outside investigative company that detected Defendant's fraud by reviewing the Defendant's affiliate's reports and websites. Those pieces of evidence demonstrate that Defendant and its affiliates had more than 300 employees during the relevant time period and had a parent with significant operations in China.

## II. The Parties

8. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

9. Defendant Convaid Products, LLC is a limited liability company formed in California with its principal place of business in Torrance, California.

## III. Jurisdiction and Venue

10. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

11. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

12. Venue is proper, and this Court has personal jurisdiction over Defendant, because Defendant is "found" in this District. 31 U.S.C. § 3732(a).

## IV. The False Claims Act

13. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

14. A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

15. Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

16. In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

17. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

18. No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

19. The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

20. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

21. The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

22. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V. No "Public Disclosure" and Relator Is An Original Source

23. On information and belief, no "public disclosure" has been made of Defendant's false statements and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

24. On information and belief, Defendant's fraudulent transaction has not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

25. Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

26. Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has "connected

the dots" between (a) Defendant's affiliates' websites and reports, and (b) Defendant's false certifications for the Second Draw PPP loan.

27. Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI. The Second Draw PPP Loan Program

28. To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[3] 15 U.S.C. § 636(a)(37)(A)(iv).

29. The SBA's website explained the 300-employee limit to borrowers. This was explained in an overview page of the website[4] and in the online "Frequently Asked Questions" document available on the website.[5]

30. The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[6]

31. The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[7]

---

[3] Small Business Administration, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

[4] Small Business Administration, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).

[5] Small Business Administration, FAQ for PPP Borrowers and Lenders (as of March 3, 2021).

[6] Small Business Administration, FAQ for PPP Borrowers and Lenders at 29 (as of March 3, 2021).

[7] Small Business Administration, FAQ for PPP Borrowers and Lenders, at 29 (as March 3, 2021).

32. The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)."[8]

33. That regulation defined affiliation broadly:

a. Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[9]

b. Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[10]

c. Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity

---

[8] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[9] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

[10] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[11]

d. Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[12]

e. Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[13]

34. The SBA required borrowers to submit a borrower application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

35. The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

[11] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

[12] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

[13] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

36. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

37. For the Second Draw PPP loans, Congress stated that "eligible entity . . . does not include . . . any business concern or entity for which an entity . . . that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership." 15 U.S.C. § 636(a)(37)(A)(iv)(III)(cc)(AA).

38. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that:

> The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

39. The SBA Form 2483-SD also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

40. The SBA guaranteed 100% of the outstanding balance of Defendant's Second Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VII. Defendant Falsely Certified to the SBA Its Compliance With the Second Draw PPP Loan Eligibility Requirements

### A. Background

#### 1. Defendant Convaid Products, LLC

41. Defendant Convaid Products, LLC ("Convaid LLC") is a limited liability company formed in California and headquartered at 2830 California Street, Torrance, CA 90503.[14]

42. Convaid LLC can be validly served with process at 330 N. Brand Blvd., Glendale, CA.[15]

43. Defendant Convaid LLC was previously Convaid Products, Inc., ("Convaid Inc."), a California corporation with its principal place of business at 2830 California Street, Torrance, CA 90503.[16]

44. In December 2015, Convaid Inc. was acquired by Etac AB ("Etac"), a Swedish corporation headquartered in Krista, Sweden.[17] After being acquired, Convaid Inc. converted to Convaid Products, LLC and remains operational under that name.[18]

#### 2. Defendant's Affiliates

45. Defendant is a subsidiary of Etac. Formed in 1973, "Etac is a world-leading develop of innovative assistive devices and patient handling equipment."[19] Etac develops wheelchairs, bathroom and daily living aids, and other products. [20]

---

[14] California Secretary of State, Convaid Products, LLC, Number 201535010073.

[15] California Secretary of State, Convaid Products, LLC, Number 201535010073.

[16] California Secretary of State, Convaid Products, Inc., Number 780974.

[17] Etac Website – Etac Acquires Convaid, https://www.etac.com/about-us/news--social-media/Newsroom/2015/etac-acquires-convaid/; Etac Website – About, History, https://www.etac.com/about-us/about-etac/history/.

[18] California Secretary of State, File No. D1320207 - 201535010073 (Limited Liability Company Articles of Organization – Conversion, filed December 16, 2015).

[19] Etac Website – About Etac, https://www.etac.com/about-us/about-etac/company/.

[20] Etac Website – About Etac, https://www.etac.com/about-us/about-etac/company/.

46. Etac's website identified the following as its subsidiaries:[21]

a. Enco Miljo (acquired 1985)
b. Inmedia (acquired 2008)
c. Molift (acquired 2010)
d. R82 (acquired 2011)
e. Convaid (acquired in 2015)
f. Star Cushion (acquired in 2016)
g. HoverTech (70% stake acquired in 2019)
h. Ki Mobility (acquired in 2021)
i. Klaxon (acquired in 2024)

47. Etac is a wholly owned subsidiary of Nordstjernan AB ("Nordstjernan"), a Swedish investment company.[22]

48. "Nordstjernan currently has shareholdings in some 20 listed and unlisted companies with headquarters in the Nordic region."[23]

49. Nordstjernan's website identifies the following entities as its "holdings":[24]

a. Nobia
b. Attendo
c. Rosti
d. Roraring
e. Dacke Industri
f. Prima Vård
g. Sunparadise
h. Bonava
i. Etac

[21] Etac Website – History, https://www.etac.com/about-us/about-etac/history/.

[22] Etac Website – Owner, https://www.etac.com/about-us/about-etac/owner/.

[23] Etac Website – Owner, https://www.etac.com/about-us/about-etac/owner/.

[24] Nordstjernan Website – Our Holdings, https://www.nordstjernan.se/en/vara-innehav.

j. Alligo

k. Norva 24

l. Insurello

m. Momentum Group

n. Zimpler

o. Aidian

p. Mentimeter

q. Engcon

r. Oden Technologies

s. Gnothis

t. Ascilion

50. On information and belief, the entities listed in ¶¶ 46 and 49, *supra*, qualify as Defendant's "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

**B. DEFENDANT'S FALSE STATEMENTS TO OBTAIN A PPP LOAN**

51. In 2020, Defendant Convaid LLC submitted a borrower application for a First Draw PPP loan in the amount of $1,450,000 to lender Customers Bank in Malvern, PA.

52. On or about November 5, 2020, the U.S. government forgave Defendant's First Draw PPP loan, with interest, in the amount of $1,457,031.51.

53. In 2021, Defendant applies for a Second Draw PPP loan.

54. Defendant submitted its borrower application form, SBA Form 2483-SD, to Readycap Lending, LLC in Berkeley Heights, NJ.

55. In its Form 2483-SD, Defendant listed its address as 2830 California St. Torrance, CA 90503-3908.

56. In its SBA Form 2483-SD, Defendant represented that it was a "sole proprietorship."

57. In its SBA Form 2483-SD, Defendant represented that it and its affiliates had 120 employees—under the 300-employee limit needed to be eligible to apply.

58. Defendant's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. Defendant and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

59. Defendant deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Defendant signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

60. Defendant also certified in SBA Form 2483-SD that it was "not a business concern or entity (a) for which an entity . . . that has significant operations in the People's Republic of China . . . owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity . . . ."

61. Defendant's certification in SBA Form 24-83-SD that it was not a business concern owned or held by an entity that has "significant operations" in China was false. Defendant's ultimate parent company Nordstjernan has a wholly owned subsidiary called Rosti Group AB with significant operations in China.[25]

62. Defendant deliberately ignored the fact that its ultimate parent company Nordstjernan has significant operations in China that made Defendant ineligible for a Second Draw PPP loan. Defendant signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

---

[25] Rosti Website - Locations, https://rosti.com/locations/rosti-china/.

63. On or about February 11, 2021, Defendant was approved for a Second Draw PPP loan in the amount of $1,475,000 by lender Readycap Lending, LLC.

64. The U.S. government paid lender Readycap Lending, LLC a lender's processing fee of 3% of the $1,475,000, in the amount of $44,250.[26]

65. On or about February 23, 2022, the U.S. government forgave 100% of Defendant's Second Draw PPP loan, plus interest, in the amount of $1,489,871.23.

### C. Evidence of More Than 300 Employees

66. In its SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

67. Etac's 2019 sustainability report indicates that the entities in Defendant's corporate group—the Etac Group—collectively had 985 employees in 2019.[27]

68. Etac's 2020 sustainability report indicates that the entities in Defendant's corporate group—the Etac Group—collectively had 940 employees in 2020.[28]

69. Etac's 2021 sustainability report indicates that the entities in Defendant's corporate group—the Etac Group—collectively had 1,300 employees in 2021.[29]

70. As of January 28, 2025, Etac's website touts that the entities in Defendant's corporate group collective have 1,400 employees.[30]

---

[26] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

[27] Etac 2019 Sustainability Report at 4, https://www.etac.com/globalassets/0-international/about-us/sustainability/reports/etac-sustainability-report-2019_web.pdf.

[28] Etac 2020 Sustainability Report at 5, https://www.etac.com/globalassets/0-international/about-us/sustainability/reports/Etac-sustainability-report-2020_low.pdf.

[29] Etac 2021 Sustainability Report at 4, https://www.etac.com/globalassets/0-international/about-us/sustainability/reports/etac-sustainability-report-2021.pdf.

[30] Etac Website – About, https://www.etac.com/about-us/about-etac/company/.

71. As noted in ¶¶ 47–49, *supra*, the Etac Group contains just a fraction of the entities that are affiliated with Defendant. On information and belief, Nordstjernan's non-Etac subsidiaries employed even more individuals than Etac employs.

72. If Defendant had counted its affiliates' employees in its Second Draw PPP loan applications, it would have reported far more than 300 employees.

73. On information and belief, Defendant's and its affiliates' payroll records from 2019, 2020, and 2021 will confirm what Defendant always knew—that it and its affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

### D. Evidence of Significant Operations in China

74. Defendant is owned by Etac.[31] Etac is a wholly owned subsidiary of Nordstjernan.[32] As of 2011, Nordstjernan owned 100% of Etac and thus 100% of Defendant.[33]

75. As of 2010, Nordstjernan had 100% ownership of Rosti Group AB ("Rosti").[34]

76. "Rosti is a global plastic injection moulding company and contract manufacturer."[35]

77. Rosti has significant operations in China. Rosti operates a 25,000 square meter plant with 1,100 employees at No.1 Huazheng Street Suzhou Industrial Park, Jiangsu Province 215026 , The People's Republic Of China.[36] The "state-of-the-art factory includes an innovation centre,"

---

[31] Etac Website – Etac Acquires Convaid, https://www.etac.com/about-us/news--social-media/Newsroom/2015/etac-acquires-convaid/; Etac Website – About, History, https://www.etac.com/about-us/about-etac/history/.

[32] Etac Website – Owner, https://www.etac.com/about-us/about-etac/owner/.

[33] Etac Website – Owner, https://www.etac.com/about-us/about-etac/owner/.

[34] Rosti Website – Our History, https://rosti.com/company/our-history/; Rosti Website – Ownership, https://rosti.com/company/ownership/.

[35] Rosti Website – Homepage, https://rosti.com/.

[36] Rosti Website – Rosti China, https://rosti.com/locations/rosti-china/.

and is "equipped with a diverse range of tools, including 114 injection moulding machines that range from 35T onwards."[37]

78. Thus, Defendant's ultimate parent has significant operations in China, thereby disqualifying Defendant from the Second Draw PPP loan program.

**FIRST CAUSE OF ACTION**

**Submitting False Claims for Payment**

**31 U.S.C. § 3729(a)(1)(A)**

79. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

80. Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender claims for approval of a Second Draw PPP loan.

81. Defendant's knowingly false claims in its SBA Form 2483-SD was material to the lender's decisions to issue the Second Draw PPP loan and was material to the SBA's decisions to forgive that loan and repay the lender.

82. But for Defendant's knowingly false claims, the lender would not have issued the loan, and the SBA would not have forgiven it.

83. The Second Draw PPP loan that Defendant obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

[37] Rosti Website – Rosti China, https://rosti.com/locations/rosti-china/.

84. The Second Draw PPP loan that Defendant obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

85. The Government later reimbursed the lender 100% of the amount of Defendant's Second Draw PPP loan, with interest.

**SECOND CAUSE OF ACTION**

**Creating a False Record or Statement Material to a False Claim**

**31 U.S.C. § 3729(a)(1)(B)**

86. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

87. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

88. Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made false records and statements—namely, its SBA Form 2483-SD and its included certifications—to support false claims submitted to the lender for approval of a Second Draw PPP loans.

89. Defendant's knowingly false records and statements were material to the lender's decisions to issue the Second Draw PPP loans and was material to the SBA's decisions to forgive that loan and repay the lender.

90. But for Defendant's knowingly false records and statements, the lender would not have issued the loan, and the SBA would not have forgiven it.

## THIRD CAUSE OF ACTION

## Improperly Avoiding an Obligation to Pay or Transmit Money

## 31 U.S.C. § 3729(a)(1)(G)

91. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

92. Defendant violated 31 U.S.C. § 3729(a)(1)(G) by knowingly and improperly avoiding Defendant's obligation to pay or transmit money to the SBA—namely, the money Defendant received from the SBA in forgiveness for Defendant's Second Draw PPP loan.

93. Defendant knew it improperly received money from the SBA when the SBA forgave Defendant's Second Draw PPP loan.

94. Defendant had an obligation to pay back the SBA the full amount Defendant received in forgiveness of the Second Draw PPP loan.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendant for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven Second Draw PPP loan and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: February 14, 2025 Respectfully submitted,

By: /s/ O. Elkhunovich
Oleg Elkhunovich (269238)
oelkhunovich@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Stephen Shackelford, Jr. (*to seek pro hac vice*)
Steven M. Shepard (*to seek pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*